<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDITH MASON, | ) |
| | ) |
| Plaintiff, | )   Civil Action No.: 09-361(JLL) |
| | ) |
| v. | ) |
| | )   **OPINION** |
| COSTCO WHOLESALE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**LINARES**, District Judge.

This matter comes before the Court on the motion to dismiss Plaintiff's Complaint filed by Defendant Costco Wholesale Corporation ("Costco") pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). Plaintiff Judith Mason commenced this class action asserting claims for violations of the New Jersey Consumer Fraud Act ("CFA") (Count I), common-law fraud (Count II), and negligent misrepresentation (Count III). Costco presently moves to dismiss Ms. Mason's Complaint in its entirety. This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Costco's motion to dismiss is granted.

**I.   BACKGROUND**

Ms. Mason is a Costco member. (Compl. ¶ 1.) Included as part of her membership fee is

an opportunity to participate in Costco's Auto Program ("CAP").  (Id. ¶ 5.)  The CAP website states that participation in the program will "save its members time and money by providing a 'no-hassle, no-haggle, prearranged price' for vehicles."  (Id.)  To this end, the website states that "[i]n the unlikely event that a problem should arise, our Member Advocacy Group will work with you to resolve the situation."  (Dec. of Bradford C. McMahan in Supp. of Def. Costco Wholesale Corp.'s Mot. to Dismiss [hereinafter "Bradford Dec."], Ex. D., Frequently Asked Questions, at 2.)  It further states:

> Our Member Advocacy Group was created to assist you whenever you have a question or concern with one of our participating dealers or any aspect of your new vehicle purchase.  We address all member issues.  The Costco Auto Program goes to great lengths to ensure our members have a no-haggle, no-hassle car-buying experience.  Our member advocates can answer any questions you may have and are here to assist you before, during, and after your purchase so please don't hesitate to contact us.

(Id. at 7.)

In addition to general program information, the CAP website also provides vehicle pricing information, but "clearly notes that '[p]rices on this Web site are intended for reference only.'" (Compl. ¶ 6.)  The CAP website further makes clear that a Costco "'Member-Only' price will be provided by the dealership's Authorized Dealer Contact."  (Id.)  As defined on the CAP website the Members-only price is "[t]he cost of a vehicle that the Costco Auto Program dealers have agreed to charge members based on an amount from invoice or MSRP."  (Bradford Dec., Ex. C., at 4.)  This price is provided from the dealer on a Members-only Price Sheet.  (Compl. ¶ 12.)  In addition to asking the dealer for the Members-only Price Sheet, the CAP website "instruct[s] members to ask the Authorized Dealer Contact to provide the selected vehicle's invoice and MSRP sheets so that members can compare the vehicle's invoice price with the 'Members-only'

price sheet, so that Costco members can determine their . . . 'savings' under the [CAP]." (Id. ¶ 11.)  In return for acting as an authorized dealer, the authorized dealerships pay Costco a fee. (Id. ¶ 7.)

Around December 1, 2006, Ms. Mason visited the CAP website to get information on the program; she was interested in purchasing a Toyota Highlander. (Id. ¶ 16.)  The website provided information for five authorized Toyota dealers. (Id.)  After being referred to an authorized dealer, she inquired about the price of a Toyota Highlander and a Toyota Highlander Hybrid. (Id. ¶ 17.) "The Authorized Dealer Contact advertised to [Ms. Mason] that the 'Member-only' price provided by Costco for the Toyota Highlander was '$200 over invoice' and was '$500 over invoice' for the Toyota Highlander Hybrid." (Id. ¶ 18.)  Ms. Mason asked for a copy of the dealer invoice, but was told that it was not available; the dealer instead said that it could provide an "inventory detail." (Id. ¶ 19.)  Ms. Mason asserts that "[t]he Authorized Dealer Contact again confirmed [that Ms. Mason's] price would be 'invoice' plus $500" for the Toyota Highlander Hybrid. (Id.)

Ms. Mason purchased a Toyota Highlander Hybrid on December 20, 2006. (Id. ¶ 21.) "The Authorized Dealer Contact had left the purchase documents for [Ms. Mason] to fill out and [she] quickly completed the transaction." (Id.)  "After returning home, [she] more carefully reviewed the purchase documents . . . [and] discovered that a new 'invoice price' had been provided and that she paid $2187 more than the promised and advertised '$500 over invoice.'" (Id. ¶ 22.)

## II.  LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. Id. In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated. Thus, as the Iqbal Court instructed, a court's "analysis [begins] by identifying the allegations in the complaint that are not entitled to the assumption of truth." Id. at 1951.

Finally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, "a document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted, alteration in original). Here, Costco argues that "the Court may properly consider the supporting Declaration of Bradford C. McMahan, as it attaches pages from the Costco website–the same website referenced in plaintiff's Complaint." ((Br. in Supp. of Def. Costco Wholesale Corp.'s Mot. to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(6) and 9(b), at 11 [hereinafter "Moving Br."].)  This Court agrees.  Ms. Mason's Complaint refers to statements on the CAP website and these statements form the basis of her claims against Costco.

## III.     DISCUSSION

Costco argues that it "does not sell or advertise individual automobiles for sale, but only refers customers to dealers participating in the [CAP.]" (Id. at 1.)  Therefore, it asserts that Ms. Mason's causes of action relate to the conduct of the Toyota dealer not Costco, and, as such, her Complaint against it must be dismissed.  Ms. Mason, on the other hand, argues that her Complaint alleges that Costco is directly responsible for the damages she claims to have sustained.  Specifically, she alleges that two distinct representations by Costco were false and misleading: (1) she claims that Costco's claim that use of the CAP will save members time and money is false and misleading; and (2) she claims that "Costco's practice of using comparisons to 'invoice' pricing in the advertisement of automobiles for sale to consumers is misleading." (Pls.' Mem. of Law in Opp'n to Def. Costco Wholesale Corp.'s Mot. to Dismiss Pl.'s Compl., at 7 [hereinafter "Opp'n Br."].)

### A.     Count I: The New Jersey Consumer Fraud Act

"[T]o state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1086 (N.J. 2007) (internal quotations omitted).  The CFA provides that

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise* or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. Stat. Ann. § 56:8-2 (emphasis added). This broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994). Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements listed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. See Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008).

As highlighted above, Ms. Mason's Complaint and brief in opposition to Costco's motion focus on two different alleged misrepresentations by Costco. Because the arguments related to each are distinct, the Court examines each separately.

    1.    <u>Statements that participation in the CAP saves members time and money</u>

Ms. Mason states that Costco markets its automobile program as providing low-prearranged vehicle pricing with authorized dealer contacts for a no-hassle experience. (Opp'n Br., at 1.) She asserts that its promises to save members time and money are false. (Id. at 11; Compl. ¶ 35.) She also asserts that "Costco relied on its reputation for offering products at a savings, and induced its members to purchase cars through their Auto Program with the belief that this would provide similar savings." (Opp'n Br., at 9.) Because she pays a membership fee to Costco to participate in its programs in order to save money, she argues that her lack of savings on

her Toyota purchase means that she suffered a loss of some value of her membership in addition to the loss she incurred from receiving "less than what she was promised." (Id. at 1, 9, 12.)

In response to Ms. Mason's allegations, Costco first argues that the statements on the CAP website that its program will save time and money are not actionable because they are "not statements of fact, but are merely expressions in the nature of puffery." See New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003). It next argues that, even if the statements are actionable, Ms. Mason has failed to plead an ascertainable loss related to these alleged misrepresentations. As a general proposition this Court agrees with Costco that broad promotional language such as statements that members will save time and money are mere puffery. Even though the statements here are broad, Ms. Mason argues that they are more than puffery because a consumer shops with Costco specifically to receive the benefit of its buying power in the marketplace; the "entire purpose behind Costco is to save time and money." (Opp'n Br., at 17.) However, because this Court also agrees with Costco that Ms. Mason has not plead any ascertainable loss with respect to these alleged misrepresentations, it need not decide whether Costco's status as a discount membership club where customers pay money to save money on products elevates these statements to actionable asserted facts.

Costco argues that "[w]ith respect to the saving of money, [Ms. Mason] cannot show that the CAP failed to save her money unless [she] establishes that the Costco Member-Only price she received was not an attractive price when compared to other prices in the marketplace at that time." (Reply Br. in Supp. of Def. Costco Wholesale Corp.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), at 8 [hereinafter "Reply Br."].) Ms. Mason argues that "[w]hether the price she paid for the vehicle was a good one is irrelevant," arguing that she expected to receive

"certain savings" which she did not receive. (Opp'n Br., at 12, 14.) But, the statements on the CAP website she points to did not promise *certain* savings, they asserted that participation in the CAP would save money in general. The facts as plead demonstrate a quick, no-haggle, no-hassle experience, saving her time. To argue that the CAP did not save her money as a general proposition, she must plead that she did not save money–that she paid more for the Toyota Highlander Hybrid than what she would have paid not using the CAP. Therefore, even if the statements that participation in the CAP would save time and money are not puffery, which this Court does not hold, she has not adequately plead a CFA claim based on these statements because she has failed to plead any facts alleging that she did not save money on her purchase.

  2. <u>References and comparisons to invoice price</u>

Ms. Mason argues that "[t]he Costco Auto Program is misleading and deceptive because its 'Members-only' price is exclusively defined in reference to the 'invoice price' of Costco's authorized dealers." (Compl. ¶ 15.) She asserts that *any* reference to invoice price is misleading because "the 'invoice price,' does not necessarily bear any relationship to the price paid by the participating dealers.'" (<u>Id.</u>) Additionally, she argues that such reference is unlawful under the CFA because use of an invoice price comparison in advertisements for automobiles violates New Jersey law.

New Jersey's Administrative Code makes it unlawful in a motor vehicle advertisement to "use, directly or indirectly, . . . a comparison to the dealer's cost, inventory price, factory invoice, floor plan balance, tissue, or terms of similar import . . . ." N.J. Admin. Code § 13:45A-26A.7(a)(10). An advertisement subject to this regulation includes "any advertisement as defined by N.J.S.A. 56:8-1(a)." <u>Id.</u> at § 13:45A-26A.3. Section 56:8-1 defines "advertisement" to

"include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan . . . ." N.J. Stat. Ann. § 56:8-1.

Ms. Mason argues that these sections refer "to *any advertisement*, and [are] *not* limited to the seller of the vehicle." (Opp'n Br., at 6, 7 (emphasis in original) (referring to the "in connection with" language in the CFA).) She argues that "Costco is clearly a major part of the sales process." (Id. at 7.) This Court finds that Ms. Mason's arguments with respect to general use of invoice price comparisons have merit. Even if the New Jersey motor vehicle advertisement regulations are not directly violated by Costco, at a minimum the CFA language is broad enough to encompass Costco's behavior here. Costco argues that it does not sell or advertise specific vehicles, and that it was the dealer, not Costco, that provided Ms. Mason with the specific price with reference to an invoice price. Costco states that "[t]he CAP simply provides useful information on a broad range of vehicles, including manufacturer's invoice price and MSRP, explains how the CAP works and refers customers to participating dealers for pricing of specific vehicles." (Reply Br., at 4.) The Court finds this statement disingenuous; the facts as alleged by Ms. Mason, which must be presumed true for this motion, allege that what Costco does through the CAP is more than simply providing information. Costco *pre-arranges* the Members-only price with the dealers. Ms. Mason alleges that the dealer told her that the Members-only price provide *by Costco* was $500 over invoice. And, Costco receives a fee from dealers from this relationship. The facts as alleged support Ms. Mason's allegations that Costco is part of the sales process, and that it, with the dealer, provided her with the $500 over invoice price.

This Court also finds Costco's arguments that references to invoice cannot be misleading where the term has been defined elsewhere on its website. In Barry v. Arrow Pontiac, Inc., the New Jersey Supreme Court held that a reference to invoice price was misleading even where the invoice contained the following language: "INVOICE MAY NOT REFLECT THE ULTIMATE COST OF THE VEHICLE IN VIEW OF THE POSSIBILITY OF FUTURE REBATE ALLOWANCES, DISCOUNTS AND INCENTIVE AWARDS FROM MANUFACTURER TO DEALER." 494 A.2d 804, 810 (N.J. 1985). Additionally, this Court disagrees that Ms. Mason has not plead an ascertainable loss; if she was promised $500 over invoice, she sustained an ascertainable loss if she did not receive that price, as she understood it to be, even if the price she received was a good one relative to other prices in the market. The problem for Ms. Mason, however, is that the loss she has alleged has nothing to do with the conduct by Costco that she alleges is unlawful under the CFA.

In an apparent effort to tie the two CFA elements together, Ms. Mason broadly alleges that "she and other members of the class paid inflated prices for the cars offered through the Auto Program due to the misleading comparisons to invoice pricing." (Opp'n Br., at 11.) However, the Complaint contains no facts to support this broad allegation. In fact, she does not allege any facts that she paid an inflated price *due to* comparison to invoice price. As argued by Costco, Ms. Mason "is suing solely because the original invoice price for her vehicle was allegedly switched by an automobile dealer she did not sue." (Reply Br., at 1.) "[S]he [does not] assert that the Costco Member-only price originally quoted by the dealer of $500 over invoice caused her injury[;] [s]he simply complains did not get that price." (Id..) Ms. Mason's allegation is that "[c]learly [she] . . . was misled, as she paid $2187 more than she anticipated *based on the change*

*in invoice price*," not the reference to invoice price itself. (Opp'n Br., at 14 (emphasis added).) Therefore, the Court finds that Ms. Mason's claims are based on her allegation that the dealer changed the price she was promised, not that any reference to invoice was misleading in this case or resulted in the loss she alleges. Additionally, she does not allege that Costco was involved in or aware of the alleged price switch by the dealer or even that Costco was aware of similar problems with this or other dealers. In fact, even though she asked for a copy of the invoice as recommended my the CAP, she accepted the dealer's statement that it was not available. She also admits that she did not read the purchase documents carefully until returning home after purchasing the vehicle even though the documents contained the information to alert her to the issue she claims here. This is not a situation where a plaintiff is alleging that the invoice price provided by the dealer was false based on subsequently obtained information; the documents with the information relied on here were provided to Ms. Mason prior to completion of the sale. She also does not allege that she called the CAP advocacy group after the dealer failed to provide the invoice or after she discovered the alleged price switch and that they refused to take any action on her behalf. This Court finds that Ms. Mason has not alleged any facts to support that her loss, paying more than $500 over invoice, was related to the conduct by Costco she alleges was unlawful or that her loss was caused by Costco rather than the dealer or her own actions. Therefore, Count I will be dismissed without prejudice.

    **B.**    **Counts II: Common-Law Fraud**

Common law fraud involves a more onerous standard than a claim for fraud under the CFA. See Cox, 647 A.2d at 462. Common law fraud claim requires a plaintiff to establish that (1) the defendant made a false representation of a presently existing or past fact, (2) the defendant

knew the representation was false, (3) the defendant intended for the plaintiff to rely on the representation; (4) that the plaintiff reasonably relied on the misrepresentation, and (5) as a result was harmed.  See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).  For the reasons discussed above and based on the specific facts alleged in the Complaint, this Court also finds that Ms. Mason has not stated a claim for common law fraud.  Specifically, Ms. Mason has not demonstrated that she was harmed as a result of Costco's conduct.  Therefore, Count II also is dismissed without prejudice.

### C. Count III:  Negligent Misrepresentation

Ms. Mason argues that to state a claim for negligent misrepresentation she only must plead that Costco "negligently made an incorrect statement, upon which the plaintiff justifiably relied." (Opp'n Br., at 20 (quoting Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 529 (D.N.J. 2008).) Costco, on the other hand, argues that Ms. Mason's negligent misrepresentation claim actually sounds in fraud as framed.  This court agrees.  The Complaint asserts that "Costco falsely represented and deceived customers."  (Compl. ¶ 45.)  As found above, Ms. Mason has not stated a claim based on fraudulent misrepresentations by Costco.  However, even using the standard set forth by Ms. Mason, she fails to state a claim; she has not plead that it was Ms. Mason's reliance on Costco's statements that resulted in her alleged loss.  Therefore, this claim is also dismissed without prejudice.

## IV. CONCLUSION

Because this Court finds that Ms. Mason has failed to state claims for fraud (Counts I & II) or negligent misrepresentation (Count III), this Court grants Costco's motion to dismiss the

Complaint without prejudice to Ms. Mason to amend her Complaint to correct any deficiencies.

An appropriate Order accompanies this Opinion.

DATED: August 25, 2009     /s/ Jose L. Linares
                            JOSE L. LINARES
                            UNITED STATES DISTRICT JUDGE